UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MARK A. PATTERSON,         )
         )
         Plaintiff,        )
         )
         vs.        )    Case No. 1:16-cv-03364-DML-SEB
         )
HOWARD HOWE,         )
         )
         Defendant.        )

## Order on Cross-Motions for Summary Judgment

This case challenges as a violation of the Fair Debt Collection Practices Act a practice the defendant Mr. Howe (an attorney) uses in debt collection cases he files on behalf of creditor-clients in Indiana state court—or at least did in this case. [1] Mr. Howe serves with the summons and complaint a document titled "Requests to Admit," consisting of four statements to which his client seeks responses under Rule 36 of the Indiana Rules of Trial Procedure.  This document does not advise of the consequences of failure to serve timely denials. Plaintiff Mark A. Patterson seeks relief for himself and on behalf of a class.  Before the court are cross-motions for summary judgment on Mr. Patterson's individual claims.  The parties seek resolution on summary judgment of the liability issues presented before addressing

---

[1]    Evidence as to how often Mr. Howe has done so is not before the court because class discovery has not been done, and it's not germane to the issues raised by the summary judgment filings.  But the generic and conclusory nature of the requests for admission suggest it was not limited to the collection action against Mr. Patterson.

any class certification issues, and the court agrees that, under the circumstances here, it is appropriate to do so.

As explained below, the court determines plaintiff Mark A. Patterson is entitled to summary judgment on his claim that Mr. Howe's use and service of requests for admission in the manner he followed when he sued Mr. Patterson in state court violated the FDCPA.[2]  Other matters remain to be decided in this case, including the appropriateness of certifying a class, damages, and attorneys' fees. Plaintiff Mark Patterson's motion for summary judgment (Dkt. 25) is GRANTED. Defendant Howard Howe's motion for summary judgment (Dkt. 22) is DENIED.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Substantive law determines the facts that are material.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Here, the parties agree that the material facts are not disputed and that the court can decide as a matter of law whether Mr. Howe violated the FDCPA.

## I.     Undisputed Material Facts

Based on the parties' submissions, the court considers the following undisputed facts.  Additional undisputed facts pertinent to the resolution of particular legal issues are discussed in the sections that follow.

---

[2]     The parties consented to referral to this magistrate judge, under 28 U.S.C. 636(b) and Federal Rule of Civil Procedure 73, for all proceedings including trial. *See* Dkt. 10-1.

On May 10, 2016, defendant Howard Howe filed a lawsuit on behalf of his client, Indiana Institute of Technology, against Mark A. Patterson, seeking to collect a debt Mr. Patterson allegedly owed to Indiana Institute of Technology ("IIT") for tuition or fees.  Attorney Howe was acting as a debt collector within the meaning of the FDCPA, and Mr. Patterson's alleged debt was a consumer debt, the collection of which is governed by the FDCPA.  Mr. Howe arranged for service by a local sheriff's office on Mr. Patterson of a summons, the complaint, and a document titled "Requests to Admit."  Mr. Patterson was served with these documents on May 12, 2016.  The Requests to Admit document reads in pertinent part as follows:

```
STATE OF INDIANA      )  IN THE HAMILTON CIRCUIT COURT
                      )  SS:
COUNTY OF HAMILTON    )  CAUSE NO.

INDIANA INSTITUTE OF                      )
TECHNOLOGY                                )
                          Plaintiff,      )
vs.                                       )
                                          )
MARK A. PATTERSON                         )
                                          )
                          Defendant.      )
```

<u>REQUESTS TO ADMIT</u>

Comes now Plaintiff, by counsel, and propounds the following Requests to Admit, pursuant to Rule 36 of the Indiana Rules of Procedure, and further requests that the answers and/or objections thereto be served upon Plaintiff by no later than thirty (30) days following the date of service upon the Defendant(s):

1.  No defendant in this cause is an infant or incompetent.

2.  No defendant in this cause is on active service in any branch of the military forces of the United States of America.

3.  The material allegations contained in the Plaintiff's complaint are true, and Plaintiff is entitled to the relief sought as a matter of law.

4.  There exists no valid counterclaim or offset to the claim(s) of the Plaintiff.

Howard Howe, Counsel to Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing Requests to Admit were requested to be served with the Summons and Complaint upon each named defendant.  Upon receipt of your e-mail address, we will transmit a copy of the foregoing in ASC11 format.

None of the documents served on Mr. Patterson explained the consequence, set forth in Indiana Trial Rule 36(A), that requests not denied within 30 days would be deemed admitted.

Mr. Patterson did file an answer to the complaint against him,[3] but he did not serve an answer to the Requests to Admit.

In the debt collection lawsuit, a mediator was appointed by the court, and the parties settled the case. On April 17, 2017, they filed an Agreement of Settlement in which Mr. Patterson agreed to the entry of judgment against him for $7,500.00 plus costs of $181.00, to be paid in installments, in exchange for IIT's promise to release his transcript on request. *See* Dkt. 23 at p. 9. The parties have designated no facts about whether the Requests to Admit had any effect on the disposition of the lawsuit.

## II.      The Claims in this Lawsuit

Mr. Patterson filed his complaint on December 14, 2016. He alleges that Mr. Howe's service of the Requests to Admit violated the FDCPA's proscription against the use of deceptive or misleading representations or means (15 U.S.C. § 1692e) or of unfair or unconscionable means (15 U.S.C. § 1692f) in the collection of a debt. He relies in particular on the fact that Mr. Howe's communications did not inform him of the consequences under Indiana law of failing to respond to the Requests to Admit within the 30 days requested in these particular Requests to Admit. Under

---

[3]      *See* the Chronological Case Summary from the Hamilton Circuit Court, referenced at Dkt. 31, p. 3. The court takes judicial notice of the CCS.

Indiana Rule of Trial Procedure 36 (which is modeled on Fed. R. Civ. P. 36), a party may serve a written request for the admission of any matters within the scope of discovery and each matter "is admitted unless, within a period designated in the request, not less than thirty days after service . . ., the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney."  A matter that is admitted "is conclusively established unless the court on motion permits withdrawal or amendment of the admission."  *See* Dkt. 23 at p. 12.

## III.   Analysis

The purposes of the Fair Debt Collection Practices Act are "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e) (quoted in *Pantoja v. Portfolio Recovery Assoc., LLC*, 852 F.3d 679, 683 (7th Cir. 2017)).  To those ends, the FDCPA prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt" and the use of "unfair or unconscionable means to collect . . . any debt."  15 U.S.C. §§ 1692e and 1692f.

Mr. Patterson maintains that he is entitled to judgment as a matter of law that Mr. Howe's communications served on him violated these provisions of the FDCPA.  In particular, he maintains (1) that the requests were at bottom requests to admit "you win and I lose" and exceeded the scope of a proper request under

Indiana Trial Rule 36; and (2) that an unsophisticated debtor would not know the consequences of a failure to deny in a timely manner, a problem exacerbated by the fact that the requests were served with the summons and complaint.

Mr. Howe has advanced a number of arguments why judgment as a matter of law should be entered in his favor. Some of those arguments overlap and some are barely developed, but they are summarized here.[4] First, he argues that Indiana Trial Rule 36 authorized his service of the requests for admission with the complaint and summons, so his doing so couldn't have violated the FDCPA. Relatedly, he contends that he had no obligation under the FDCPA to give Mr. Patterson legal advice by explaining in his communications the consequences of a failure to serve timely responses to the request for admissions. Second, he says that the preclusive effect of deemed admissions never applied here because he had not served the requests in an electronic format as provided by Indiana Trial Rule 26(A.1). Third, Mr. Howe argues that Mr. Patterson has designated no evidence that an unsophisticated debtor would have found the communications misleading or deceptive. Fourth, he argues that Mr. Patterson has no evidence of injury, rendering his claims insufficient under *Spokeo*. Finally, he asserts that the claims are barred by the *Rooker-Feldman* doctrine.

---

[4]     In his first summary judgment submission, Mr. Howe argued that he is not a debt collector. He later withdrew that argument. *See* Dkt. 28.

In the course of its discussion below, the court will address to the extent necessary all the arguments of the parties, though not necessarily in the order they were made.

### A. Use of a discovery device authorized by the Indiana Trial Rules does not immunize Mr. Howe from liability under the FDCPA regardless of the surrounding circumstances.

Mr. Howe's principal argument, whether asserted under the label of due process (Dkt. 29 at p. 3), federalism (Dkt. 23 at p. 3), professional responsibility (*id.*), or an "attack on Rule 36" (Dkt. 29 at p.5), is that service of requests for admission with the summons and complaint is permitted by the law (in particular, Indiana Trial Rule 36) and thus could never violate the FDCPA. Mr. Howe cites no authority for that argument. And indeed, that argument cannot be squared with Supreme Court and Seventh Circuit precedent. The core of his argument is that in litigating against Mr. Patterson, he used means expressly authorized by the Indiana Trial Rules, in this case, a discovery device authorized by a trial rule. But the law is clear that the use of litigation tools—whether in issuing pleadings, filings, or discovery—can violate the FDCPA, even though those tools are specifically authorized by the trial rules.

The Seventh Circuit, along with many other courts, has made clear that the litigation activities of lawyers—which are grounded in state rules of procedure—can violate the FDCPA. In *Marquez v. Weinstein, Pinson & Riley*, *P.S.*, 836 F.3d 808, 810-11 (7th Cir. 2016), the Seventh Circuit expressly held that the FDCPA covers the *process* of litigation and that pleadings or filings can fall within the FDCPA. In

doing so, our court of appeals cited the Supreme Court's decision in *Heintz v. Jenkins*, 514 U.S. 291 (1995), as well as the decisions of numerous federal courts of appeal. *See* 836 F.3d at 810.

Putting it another way, Mr. Howe contends that the Indiana Supreme Court has determined that the rules of procedure it has adopted are "just," and thus his adherence to them is, by definition, just. *See* Dkt. 29-5. That contention does not withstand basic scrutiny. Rules of procedure authorize and govern the service and filing of all sorts of documents: pleadings, motions, discovery requests, and the like. But that does not mean that a lawyer's particular use of those procedures is always just or cannot give rise to some other liability. One need look no further than Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 to see that both the Supreme Court and Congress recognize that procedural devices can be used in "frivolous," groundless," and "vexatious" ways.

Mr. Howe's argument has also been implicitly rejected in a number of decisions in which courts, including the Seventh Circuit, have found that certain debt collection practices, though consistent with state law or rules, have violated the FDCPA. For example, in *Oliva v Blatt, Hasenmiller, Leibsker & Moore LLC*, 864 F.3d 492 (7th Cir. 2017), the Seventh Circuit, sitting *en banc*, held that a debt collector that had brought a collection suit against the debtor in a municipal district in which he didn't reside—having done so in reliance on controlling precedent— nevertheless could violate the FDCPA. *Oliva's* predecessor decision, *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014), is also instructive on this point. *In*

*Suesz*, the court held that a collection suit filed in a township other than the township where the debtor resided violated the FDCPA, even though state law venue rules permitted it. *Id*. at 638. The Seventh Circuit has also held that a debt collector can violate the FDCPA by suing on a debt barred by the statute of limitations, though the applicable state law would permit a collector to do so, leaving to the debtor the affirmative defense. *See Phillips v Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2014). *See also Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679, 683 (7th Cir. 2017).[5]

Finally, the court notes that the FDCPA itself provides that the statute preempts state laws "to the extent that those laws are inconsistent with any provision of [the FDCPA]." 15 U.S.C. § 1692n. The court acknowledges that finding this provision entirely dispositive may implicate a beg-the-question flaw. But the point remains that Congress recognized in enacting the FDCPA that certain practices could be authorized by state law and yet violate the Act. Mr. Howe is simply wrong that a practice authorized by Indiana law or rule must be beyond the reach of the FDCPA.[6]

---

[5] The United States Supreme Court held in *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407 (2017), that submission of a time-barred claim in bankruptcy does not violate the FDCPA. The court made clear, however, that its holding does not apply to the filing of a civil suit, as addressed in *Phillips* and *Pantoja*. *See id.* at 1413.

[6] Mr. Patterson has also argued that Indiana Trial Rule 36 affords Mr. Howe no safe harbor because his requests for admission were not proper discovery requests under the rule. He contends that they were improperly directed toward ultimate legal conclusions rather than to evidentiary issues. Mr. Patterson has loaded more cargo on his cited authority than it will bear, but the court does not need to address his argument in this context and therefore does not. However, as

**B. The fact that Mr. Howe did not comply with an Indiana trial rule regarding service of the requests does not nullify a violation of the FDCPA.**

Mr. Howe has also advanced the curious argument that because he did not serve an electronic version of the requests for admission, as provided by Indiana Trial Rule 26(A.1), then the requests weren't actually "served," and thus couldn't have created a violation of the FDCPA. This no-harm-no-foul argument is unavailing, for a number of reasons. First, the FDCPA targets "means" and "communications" that are misleading or unfair; it is not limited to communications "served" under the applicable trial rules. Second, nothing in Indiana Trial Rule 26(A.1) provides that a discovery request is nullified or deemed invalid if it is not served in an electronic format.[7] Third, the operation of Rule 26(A.1) would have rendered Mr. Howe's service of the requests for admission under these circumstances even *more* misleading: Mr. Howe has confused this *court* about when Mr. Patterson's responses to the requests were due when not accompanied by electronic service; an unsophisticated consumer would be hopelessly confused. Fourth, Mr. Howe's argument springs from another faulty premise—that the misleading communication or unfair means must have actually caused Mr.

---

discussed in section III.D. below, the conclusory nature of the requests is one of the facts that contributes to the misleading and unfair nature of the communications Mr. Patterson received from Mr. Howe.

[7] And if, as Mr. Howe says, the lack of service rendered his entire effort meaningless, one is left to wonder why he does it.

Patterson to lose his case. Nothing in the FDCPA requires this sort of proof. [8]

Finally, the court notes the irony of Mr. Howe's argument that a communication or means that complies with Indiana Trial Rule 36 cannot form the basis of an FDCPA violation when he at the same time acknowledges he failed to comply with the trial rules in effecting that communication or means.

### C. The *Rooker-Feldman* doctrine has no application here.

Mr. Howe argues that the *Rooker-Feldman* doctrine bars Mr. Patterson's FDCPA claim. The court does not follow this argument—at all—but can still easily reject its application here. The *Rooker-Feldman* doctrine divests lower federal courts of "jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 227 (Oct. 2, 2017); s*ee D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923). As Mr. Patterson points out, this case was filed well before any judgment was entered in the underlying debt collection case.[9] Moreover, even if this case had been filed after the state court judgment, it does not seek to set aside that judgment. Nor is it "inextricably intertwined" with a state court judgment. If Mr. Patterson succeeds here against Mr. Howe, it will not undo the money judgment Mr. Howe's *client* obtained against Mr.

---

[8]     This point will be addressed more fully in section III.E. below.

[9]     *See* the Chronological Case Summary from the Hamilton Circuit Court, referenced at Dkt. 31, p. 3. The court takes judicial notice of the CCS.

Patterson in the Hamilton Circuit Court. *See Mains*, 852 F.3d at 675 (quoting *Sykes v. Cook County Circuit Court Prob. Div.*, 837 F.3d 736, 743 (7th Cir. 2016)). [10]

### D. Mr. Howe's service of requests to admit under the undisputed circumstances presented here violated the FDCPA as a matter of law.

#### 1. Mr. Patterson was not required to present survey evidence to show that the challenged practice was misleading to the unsophisticated consumer.

Courts have frequently explained that alleged FDCPA § 1692e deceptive/misleading violations fall in one of three categories: The first category consists of cases where the allegedly offensive language is plainly and clearly not misleading; in such cases, the collector would be entitled to judgment as a matter of law. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (citation omitted). The second category consists of cases where the language is not misleading or confusing on its face, but has the potential to be misleading to the unsophisticated consumer; in such cases, the plaintiff "may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.* (quoting *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009)). Finally, the third category consists of cases where the communications are plainly deceptive or misleading, and therefore do not require any extrinsic evidence in order for the plaintiff to be

---

[10] Mr. Howe's invocation of *Rooker-Feldman* is also contextually flawed. The doctrine undermines a federal court's subject matter jurisdiction under Rule 12(b)(1). Mr. Howe has not filed a motion under that rule.

successful. *Id.* This last category, like the first, is amenable to determination as a matter of law. *See, e.g., Marquez,* 836 F.3d at 814-15.

Mr. Howe contends that Mr. Patterson's FDCPA claim fails as a threshold matter because he has not designated survey or other evidence to show that the hypothetical unsophisticated debtor would have found Mr. Howe's service of requests to admit—under these circumstances and without advising of the consequences of failure to respond—misleading. *See* Dkt.29, pp. 1-2. But as the following discussion demonstrates, the practice at issue falls into the third category, so Mr. Patterson was not required to present any extrinsic evidence.

### 2. The requests for admission as served in this case were misleading and unfair.

As noted above, Mr. Patterson received three documents—served together—from Mr. Howe. He received a complaint that alleged he owed IIT a certain sum, had failed to pay it, and that IIT was entitled to a judgment against him in that amount. He received a summons that informed him, as provided by Indiana Trial Rule 4(C), that he had a specified period of days, as computed under Indiana Trial Rule 6, to respond to the complaint, along with "a clear statement that in case of his failure to do so, judgment by default may be rendered against him for the relief demanded in the complaint." Indiana Trial Rule 4(C). And he also received the Requests to Admit, in which the plaintiff, through its counsel, "request[ed]" that he respond within 30 days to statements tantamount to admissions that he owed the money, that he had no legal defenses to the plaintiff's claim, and that the plaintiff was entitled to recover against him.

Mr. Howe argues that he can't be required under the FDCPA to provide legal advice to his client's adversary by advising Mr. Patterson of the legal consequences of his failure to serve timely responses to the requests for admission. That broad assertion is inconsistent with a recent decision of the Seventh Circuit in which it implicitly rejected the notion that an FDCPA violation can't be grounded in a collector's failure to advise of legal consequences. In *Pantoja v. Portfolio Recovery Assoc.*, 852 F.3d 679 (7th Cir. 2017), the court addressed a communication to a debtor that invited the debtor to enter into a payment program on a time-barred debt but that didn't advise that such payments could reset the statute of limitations on the debt. It explained, "[W]e believe the FDCPA prohibits a debt collector from luring debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated consumer would understand." *Id.* at 685.

And though this court would be inclined to hold that, in order to avoid a violation of the FDCPA, requests for admission should always advise of the consequences of a failure to make timely response, it does not need to do so here. Rather, it was the *combination* of communications that was inherently misleading and unfair. The summons unambiguously advised Mr. Patterson that he faced a judgment against him if he failed to file a timely answer to the complaint. Mr. Patterson *did* file an answer, and an unsophisticated debtor would conclude that that was what was necessary at that point to avoid judgment. But the discovery request Mr. Howe served with the complaint and summons ambiguously

"requested" Mr. Patterson to do essentially the same thing again, but separately and only shortly after his response to the complaint was due, and in a completely different manner—not by filing with the court but by serving the plaintiff's counsel.

The request for admissions, under these circumstances, would confuse an unsophisticated debtor (and in this court's view, probably even a sophisticated one) about the required timing and manner of a response to the plaintiff's claims. The Seventh Circuit has held that communications that confuse in these ways violate the FDCPA. In *Marquez v. Weinstein, Pinson & Riley*, the court addressed an allegation in a collector's complaint that the debt "will be assumed to be valid and correct if not disputed . . . within thirty (30) days." 836 F.3d at 813. But that was not the date by which the answer to the complaint was due, and the court found it misleading and deceptive as a matter of law. *Id.* at 815. The Seventh Circuit's observation—apt here too—is that its function was only to mislead. *Id.* at 814.

The confusion created by service of the requests for admission with the complaint and summons is exacerbated by the content of the requests. As discussed in footnote 6 above, the court does not adopt Mr. Patterson's view that requests to admit conclusory or legal assertions are not permitted by Indiana Trial Rule 36. But the language of these particular requests is a factor the court considers in concluding that their service here, unaccompanied by a statement of the consequences of a failure to respond, contributed to the FDCPA violation. For example, they asked Mr. Patterson to admit that the "material" allegations of the complaint are true, that the plaintiff is "entitled to judgment as a matter of law,"

that there is no valid counterclaim, and that there is no offset. These are not terms that an unsophisticated consumer would know. And again, their conclusory nature renders them confusing because they broadly seek admissions that "collector wins" at the same time the debtor is being directed to file (and in this case did file) a timely answer in order to deny that "collector wins." Furthermore, the discovery requests merely "requested" Mr. Patterson to respond; the other documents he received clearly commanded a response. An unsophisticated consumer is very unlikely to apprehend the dire consequences of not acceding to the collector's "request."

### 3. The Ninth Circuit has held that service of requests to admit without advising of the consequence of failure to respond violates the FDCPA.

In *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 950 (9th Cir. 2011), the court found that service of requests for admission on a pro se defendant without explaining that the requests would be deemed admitted after thirty days was, as a matter of law, "unfair or unconscionable" or "false, deceptive, or misleading" under the FDCPA. Like Mr. Howe's requests here, the requests at issue in *McCollough* effectively requested the debtor to admit the collector's entire case against him and to concede all defenses. *Id.* at 952. The Ninth Circuit upheld the district court's entry of summary judgment in favor of the debtor on his FDCPA claim, holding that "[t]he least sophisticated debtor cannot be expected to anticipate

that a response within thirty days was required to prevent the court from deeming the requests admitted." *Id.*[11]

Mr. Howe urges this court not to follow *McCollough*. He maintains that this Ninth Circuit decision is not binding on this court and that it employs the "least sophisticated consumer" standard rather than the "unsophisticated consumer" standard that prevails in this circuit. He further maintains that the *McCollough* court was concerned that the statements the collector requested the debtor to admit were false and that the creditor knew they were false. Each of Mr. Howe's points is correct, but they do not compel a different result here.

First, though *McCollough* is not binding authority, it is instructive and persuasive. Second, the difference in legal standards between the Ninth and Seventh Circuits might make a difference in some cases, but it does not here. This court's analysis is based on the "unsophisticated consumer" standard. Third, the court agrees that Mr. Patterson has not presented evidence in this case that shows the statements in the Requests to Admit were false. But falseness is not the only factor that can make the requests, without advising of the consequences of timely denial, misleading or unfair. The requests in *McCollough* were not served with the complaint and summons, but months later. As explained in the preceding section, Mr. Howe's service of the requests to admit with the complaint and summons and without any statement of the consequence of lack of timely denials was

---

[11]     The Ninth Circuit also expressly rejected the argument Mr. Howe makes here—that if the requests for admission complied with the state trial rules they ought not to subject counsel to liability under the FDCPA. *See id.* at 951.

misleading—because it created the very sort of confusion as to the timing and manner of response that the Seventh Circuit condemned in *Marquez*.

In addition, as Mr. Patterson points out, the facts here are in some ways more compelling than those at issue in *McCollough*. Service of the requests with the summons could suggest to the unsophisticated debtor some endorsement by the court, and the requests were more likely to be overshadowed by the commanding nature of the complaint and summons.

To the extent that *McCollough* could be read to hold that any service of requests for admission, without advising of the consequence of failure to respond, constitutes a violation of the FDCPA, this court does not go that far. Rather, as already explained, the combination of documents served on Mr. Patterson at the same time rendered the requests misleading and unfair.

**E. Mr. Howe's Spokeo argument is unavailing here.**

Mr. Howe also contends that Mr. Patterson lacks the requisite standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), to maintain his claim. *Spokeo* was not an examination of standing under the FDCPA, and Mr. Howe has not cited a single authority to support his argument that Mr. Patterson had to have suffered a subjective pecuniary or other harm to maintain a claim for violation. And indeed, this court and a legion of courts around the country have rejected post-*Spokeo* challenges in FDCPA cases. In *Neeley v. Portfolio Recovery Assoc., LLC*, 268 F. Supp. 3d 978 (S.D. Ind. 2017), this court surveyed several of those decisions. *See id.* at 981-82 (citing cases). This court also observed in *Neeley* that the Seventh Circuit

has made clear that FDCPA claims are evaluated under the "unsophisticated consumer" standard. *Id.* at 982 (citing *Pantoja*, 852 F.3d at 686). And because that is an objective test, it is "'unimportant whether the individual that actually received a violative [communication] was misled or deceived.'" 268 F. Supp. 3d at 982 (quoting *Lox*, 689 F.3d at 826). *See also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017) ("*Spokeo* does not sweep so widely as to overrule Seventh Circuit decisions affirming the power of Congress to enact statutes creating legal rights, the invasion of which confers standing even though no injury would exist without the statute.") (internal quotation marks omitted); *Aguirre v. Absolute Resolutions Corp.*, 2017 WL 4280957, at *3 (N.D. Ill. Sept. 27, 2017) ("*Spokeo* does not indiscriminately sweep aside all the legal rights created by Congress that confer standing where no injury would otherwise exist.").

The prevalence of that view in the Seventh Circuit is also illustrated by decisions issued quite recently. *See Keys v. Collection Professionals, Inc.*, 2018 WL 1469006 (N.D. Ill. March 26, 2018) (plaintiff's receipt of misleading communication establishes concrete injury); *Derosia v. Credit Corp Solutions, Inc.*, 2018 WL 1513043, at *5 (E.D. Wis. March 27, 2018) ("However, 'a plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'" (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *McMahon v. LVNV Funding, LLC*, 2018 WL 1316736 (N.D. Ill. March 14, 2018) (same).

The principal rationale of the many post-*Spokeo* decisions rejecting standing

challenges in FDCPA cases can be distilled to this point: a debtor's receiving a

misleading communication or being the subject of an unfair means of collection

inflicts exactly the sort of injury Congress sought to prevent in enacting the FDCPA;

a violation of the FDCPA can give rise to an "injury in fact" because it is not a "'bare

procedural violation'" but rather an infringement on an individual's substantive

right conferred by Congress to receive truthful information in debt collection

communications." *Taylor v. Fin. Recovery Servs., Inc.*, 252 F. Supp. 3d 344, 349

(S.D.N.Y. 2017) (quoting *Spokeo*, 136 S. Ct. at 1549).[12]

Nevertheless, the standing issue may be academic in Mr. Patterson's case.

He has presented evidence, by affidavit, that he *was* misled by the requests to

admit. *See* Dkt. 31-1. Mr. Howe argues that Mr. Patterson filed his affidavit too

late—with his reply in support of his motion for summary judgment—and that it

should not be considered. That is not persuasive for two reasons. First, Mr.

Patterson's "reply" was a consolidated brief in opposition to Mr. Howe's motion for

summary judgment and reply in support of his own, filed on September 27, 2017; it

---

[12]    Courts are not unanimous on this issue. For example, a panel of the Sixth
Circuit recently suggested that *Spokeo* places a constitutional limitation on
Congress's ability to declare that a violation of the FDCPA in itself establishes an
Article III injury: "We know of no circuit court decision since *Spokeo* that endorses
an anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury.
Although Congress may 'elevate' harms that 'exist' in the real world before
Congress recognized them to actionable legal status, it may not simply enact an
injury into existence, using its lawmaking power to transform something that is not
remotely harmful into something that is." *Hagy v. Demers & Adams*, 882 F.3d 616,
622 (6th Cir. 2018) (citations omitted).

was his first opportunity to respond to Mr. Howe's *Spokeo* argument raised just two days before, on September 25, 2017. Second, Mr. Howe had and took the opportunity afforded by Local Rule 56-1(d) to file a surreply (Dkt. 33) to address the new evidence presented in Mr. Patterson's filing. Mr. Patterson's affidavit was not untimely and in any event did not prejudice Mr. Howe.[13]

**F. The court will not make a damages award at this time.**

In his summary judgment brief, Mr. Patterson agrees that he has not shown actual damages, and he asks the court to award him the maximum statutory damage of $1000. Though Mr. Howe has not directly challenged this request, the court will not enter summary judgment in an amount of statutory damages. The Seventh Circuit has held that "the FDCPA provides for trial by jury in determining statutory . . . damages." *Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 898 (7th Cir. 1998). Even if there were no disputed facts, the need to exercise discretion in determining the amount of statutory damages to award makes the issue inappropriate for disposition on summary judgment. As one court in this circuit has explained, section 1692k "is multifaceted and open-ended, granting the factfinder considerable discretion to set statutory damages." *Gillespie v. Blitt & Gaines, P.C.*, 123 F. Supp. 3d 1029, 1033–34 (N.D. Ill. 2015). "When there is a material dispute of fact to be resolved *or discretion to be exercised* in selecting a financial award, then

---

[13]     Interestingly, Mr. Howe also claims (Dkt. 33 at pp. 2-3) that Mr. Patterson's affidavit is irrelevant because the pertinent question is what effect the communications would have on a hypothetical unsophisticated consumer— interesting, because it tends to undermine Mr. Howe's standing argument.

either side is entitled to a jury. . . ." *BMG Music v. Gonzalez,* 430 F.3d 888, 892 (7th Cir. 2005) (emphasis added). By contrast, only "if there is no material dispute *and* a rule of law eliminates discretion in selecting the remedy, then summary judgment is permissible." *Id.* at 892–93 (emphasis added). Because "[s]ection 1692k(b) channels, but does not eliminate in any circumstance, the jury's discretion to award statutory damages," the court determines that "summary judgment is not appropriate for statutory damages." *Gillespie*, 123 F. Supp. 3d at 1034. In addition, Mr. Patterson has brought this case as a class action, and it is more appropriate to address remedies after the resolution of Rule 23 issues and in connection with a final judgment.

## Conclusion

Plaintiff Mark Patterson's motion for summary judgment (Dkt. 25) is GRANTED as to liability and DENIED as to amount of damages. Defendant Howard Howe's motion for summary judgment (Dkt. 22) is DENIED.

So ORDERED.

Date: 3/30/2018

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

22